UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| FALON RADCLIFFE, AS MOTHER AND<br>NEXT FRIEND OF JOSEPH LELAND<br>RUTLEDGE, AN INFANT | | **PLAINTIFFS** |
| **VERSUS** | CIVIL ACTION, FILE .: 4:10cv165 HTW LRA | |
| | | **JURY TRIAL DEMANDED** |
| RUSH MEDICAL FOUNDATION<br>D/B/A RUSH FOUNDATION HOSPITAL,<br>LAUDERDALE EMERGENCY GROUP, LLC<br>AND DOES I-X | | **DEFENDANTS** |

**COMPLAINT**

COME NOW, the Plaintiffs, and file this Complaint against the Defendants and state:

I.

The parties are:

1.  Plaintiff, Falon Radcliff, is the mother of Joseph Leland Rutledge, an infant. Their address is 297 Busby Drive, Needham, Alabama 36915. Both plaintiffs are residents of the State of Alabama.

2.  The Defendants are:

    a.  Rush Medical Foundation, d/b/a Rush Foundation Hospital, 1314 19th Avenue, Meridian, Mississippi 39301, whose registered agent for service of process is J. Richard Barry, 505 Constitution Ave., Meridian, MS 39302. Rush Medical Foundation, d/b/a Rush

      Foundation Hospital is domiciled in Mississippi.

  b.  Lauderdale Emergency Group, LLC, is a Mississippi limited liability corporation whose agent for service of process is CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood MS 39232.

  c.  Does I - X, the Plaintiffs are or may be ignorant of the name of one or more persons or entities liable for the injuries complained of or of the correct name of one or more of the Defendants named above and therefore Plaintiffs sue Does I-X and will amend by substituting true names of any Defendant if and when the true name is discovered and by adding additional Defendants not named above, when discovered.

## II.

The jurisdiction is proper in this Court pursuant to the 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

## III.

It is believed and alleged that at all times herein mentioned all of the individuals providing medical care to the infant plaintiff, at the Rush Foundation Hospital Emergency Room during the relevant times herein, were the agents, servants and/or employees of Defendants Rush Medical Foundation, d/b/a Rush Foundation Hospital (hereinafter "Rush Hospital") and Lauderdale Emergency Group, LLC (hereinafter "Emergency Group") and that each individual was acting within the course and scope of his or her employment with Defendants at all relevant times described herein.

IV.

The facts are:

1. The infant plaintiff, Joseph Leland Rutledge (hereinafter "Leland") was born at Rush Hospital on October 7, 2008. The delivery was uneventful and he was discharged home with his mother, Falon Ratcliffe (hereinafter "Falon") on October 9, 2008.

2. On October 23, 2008, Falon returned to the Rush Hospital emergency room with Leland just before midnight with a complaint that he was breathing irregularly, coughing and that he had a "blister" on his head. He was assessed and examined by employees of both Rush Hospital and Emergency Group. There is no note in the Rush Hospital record that any examination or tests were performed on the "blister" to Leland's scalp. After a finding of no acute distress, Leland was discharged without treatment from Rush Hospital emergency room in the early morning hours of October 24, 2008.

3. A few hours later, and still on the morning of October 24, 2008, Falon took Leland to Dr. Lee Armistead. She advised Dr. Armistead of the result of the earlier visit that morning to Rush Hospital and expressed her continuing concern about Leland's condition. Dr. Armistead examined Leland and, in his records, described the "blister" to Leland's head as a "vesicular lesion" to the posterior scalp (hereinafter "scalp lesion"). He found that Leland was lethargic, with weight loss and jaundice. Dr. Armistead recommended that Falon immediately return with Leland to Rush Hospital. Dr. Armistead called the Rush Hospital emergency room and had a telephone conversation with the

physician on duty. Dr. Armistead advised the emergency room physician at Rush Hospital that Leland had a scalp lesion and that he suspected that it could be a *Herpes* virus infection. Dr. Armistead was told that Rush would accept Leland as a patient.

4. Falon drove Leland back to Rush Hospital emergency room, where he was seen at 11:15 a.m., on October 24, 2008. He was again assessed and examined by employees of both Defendants, Rush Hospital and Lauderdale Emergency Group. The records from this visit record that Leland was not in any acute distress and that he appeared well. Again, there is no note in the Rush Hospital emergency room record that any examination or tests were performed on the scalp lesion, despite Dr. Armistead's previous call to the emergency room physician. Leland was discharged without any examination or treatment of the scalp lesion.

5. On October 28, 2008, Falon telephoned Dr. Armistead's clinic and told a nurse that Leland's condition was becoming progressively worse. When she was asked about the result of the October 24th Rush Hospital visit, she advised the nurse that no treatment had been provided for the scalp lesion at Rush Hospital on October 24th. The nurse told Falon to bring Leland in to see Dr. Armistead. Dr. Armistead examined Leland and noted that his fever was elevated and described the lesion on Leland's head as a "herpetic lesion" (caused by the *Herpes* simplex virus). Dr. Armistead again called Rush Hospital and asked that Leland be immediately admitted.

6. Leland was admitted to Rush Hospital at 11:58 a.m. on October 29, 2008, by

Dr. Suzanne Miller. She described Leland as extremely quiet, emaciated, with an abnormal neurological exam and possible serial and sequential seizures. Her diagnosis was static encephalopathy, seizure disorder, increased head growth (from 33.5 cm to 36.5 cm), poor weight gain, failure to thrive, and neonatal fever. Dr. Miller made arrangements for Leland's immediate transfer to the Children's Hospital at the University Hospital of Alabama at Birmingham (hereinafter "UAB").

7. Leland was transferred by ambulance to UAB and he remained admitted there until November 20, 2008. He was ultimately diagnosed with extensive meningoecephalitis due to an infection with the *Herpes simplex* II virus. A culture of the scalp lesion was done at UAB and was found to be positive for *Herpes simplex* II Virus.

8. Leland continues under the treatment of his physicians, however, he remains profoundly neurologically impaired. His inability to swallow prevents him from eating sufficient oral nutrition. Consequently, he remains on a feeding tube. At this time, it is estimated that he will need twenty-four hour a day care and regular medical support for the rest of his life.

V.

Defendants, by and through their agents, servants and employees, negligently failed to provide Leland the standard of care required of hospitals and hospital personnel and minimally competent medical doctors, nurses, and other medical personnel in the United States of America. More specifically, the Defendants by and through their agents, servants and employees negligently failed to timely diagnose and treat Leland's developing *Herpes*

viral infection.

VI.

The negligent failure of the Defendants and their agents, servants and employees to provide the appropriate standard of diagnosis, care and treatment to Leland on October 24, 2008, was the sole proximate cause of the devastating injuries that have left Leland severely physically and mentally impaired for the remainder of his life.

VII.

The Defendants are liable, as set forth above, and on theories of negligence, professional negligence, respondant superior, apparent agency and/or a violation of nondelegable duties and/or the willful, wanton and reckless disregard for the health, safety and welfare of the infant plaintiff.

VIII.

As a direct and proximate result of the negligence of the Defendants, Plaintiff, Leland Rutledge has suffered injuries and damages in an amount in excess of the minimum jurisdictional limits of this Court.

WHEREFORE PREMISES CONSIDERED, the Plaintiffs demand a trial by jury, and Judgment against the Defendant(s), jointly and severally, in an amount adequate to cover all damages of every kind to the Plaintiffs, together with exemplary damages, pre-judgement interest, post-judgement interest and all costs herein.

RESPECTFULLY SUBMITTED this the 28th day of September, 2010.

                                            FALON RADCLIFF AS MOTHER AND
                                            NEXT FRIEND OF JOSEPH LELAND
                                            RUTLEDGE, AN INFANT
                                            BY: /s/ William B. Carter
                                            WILLIAM B. CARTER
                                            FOLLETT CARTER ATTORNEYS

## CERTIFICATE

The undersigned attorney for Falon Radcliff, as Mother and Next Friend of Joseph Leland Rutledge does hereby certify that he has read the pleading; made reasonable inquiry regarding their contents and, to the best of his knowledge, information and belief, they are warranted by, are a reasonable extension of or are a modification or reversal of existing law; they are well grounded in fact and are interposed or filed for an improper purpose.

The undersigned attorney further certifies that he has reviewed the facts of this case and has consulted with at least one expert qualified pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence who is qualified to give expert testimony as to the standard of care or negligence and who the attorney reasonably believes is knowledgeable in the relevant issues involved in this action, and that the undersigned attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

THIS THE 28th day of September, 2010.

_____
WILLIAM B. CARTER

FOLLETT CARTER, ATTORNEYS
WILLIAM B. CARTER, SBN 5910
1709 23RD AVENUE
POST OFFICE BOX 406
MERIDIAN, MS 39302-0406
(601) 693-2468